# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| SIERRA LEONE GOULD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 2:19-CV-00085-NCC |
| ANDREW M. SAUL, Commissioner of Social Security | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Sierra Leone Gould ("Plaintiff") Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 21), Defendant has filed a brief in support of the Answer (Doc. 22), and Plaintiff has filed a reply brief (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I.  PROCEDURAL HISTORY

Plaintiff filed her application for SSI on March 27, 2017 (Tr. 183-87). Plaintiff's claim was initially denied on May 17, 2017, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 114-21). After a hearing, by a decision dated December 31, 2018, the ALJ found the Plaintiff not disabled (Tr. 10-12). On September 17, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 27, 2017, the alleged onset date (Tr. 15).  The ALJ found Plaintiff has the severe impairment of intellectual disability, but that no impairment or combination of impairments meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations (Tr. 19).  Plaintiff is able to understand, remember, and carry out simple instructions consistent with unskilled work in a job where there are no strict production quotas and she would not be subject to the demands of fast-paced production work, i.e. work by the shift and not by the hour (*Id.*).  She can perform only simple decision-making related to basic work functions, tolerate only minor, infrequent changes within the workplace, and is limited to work where reading and math are not primary job duties (*Id.*).  The ALJ found that Plaintiff has no past relevant work but that there are jobs that exist in significant numbers in the national economy that claimant can perform including kitchen helper/dishwasher, marker, and cleaner housekeeping (Tr. 24-25).  Thus, the ALJ concluded that Plaintiff has not been under a disability from March 27, 2017, through the date of the decision (Tr. 25).

## III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

*Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Id.*  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to fully and fairly develop the record (Doc. 21 at 19-23). Second, Plaintiff asserts that the ALJ's finding at Step 5 of the evaluation process under the Social Security Act is not supported by substantial evidence (*Id*. at 24-34). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

Plaintiff argues that the ALJ failed to fully and fairly develop the record (Doc. 21 at 19). Specifically, Plaintiff asserts that the ALJ improperly relied on the May 16, 2017 opinion of state agency medical consultant, Dr. Steven Akeson, Psy.D., and should have ordered an additional consultative evaluation in order to provide an adequate basis for decision making in accordance with 20 C.F.R. § 416.919p(a)(1)[1] (*Id.* at 22-23). To fully and fairly develop the record, Plaintiff argues, the ALJ had a duty to get a complete report from consulting psychologist, Dr. Laura Brenner, Ph.D. ("Dr. Brenner"), to help her determine the nature, severity, and duration of the impairment, as well as Plaintiff's RFC (*Id*. at 23).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before

---

[1] In relevant part, 20 C.F.R. § 416.919p(a)(1) states:

> We will review the report of the consultative examination to determine whether the specific information requested has been furnished. We will consider . . . [w]hether the report provides evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses.

5

rendering a decision. 20 C.F.R. § 416.945(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). However, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

As a preliminary matter, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints.[2] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the

---

[2] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

6

claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's "statements about the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 20). The ALJ determined that "the objective findings of the case, in combination with [Plaintiff's] own reported activities of daily living, fail to support the existence of limitations greater than those in the residual functional capacity" (*Id.*). The record indicates that while Plaintiff was able to graduate high school, she has a history of learning-related difficulties evidenced by her repetition of the first grade, her low standardized test scores, and her involvement in special education (Tr. 39, 255, 262-65). Indeed, intelligence testing from 2011 placed Plaintiff in the extremely low range of cognitive ability, and she was diagnosed with mild mental retardation (Tr. 287-88). Patrick Finder, a psychological consultative examiner, confirmed this diagnosis in his July 24, 2013 report (Tr. 295-96). Dr. Brenner similarly diagnosed Plaintiff with mild intellectual disability using new diagnostic terminology in her 2017 consultative psychological evaluation of Plaintiff (Tr. 303). However, as the ALJ noted, the

7

three mental status examinations showed no significant psychological or cognitive abnormalities that would be entirely work preclusive (Tr. 20).  For example, at the May 2017 consultative examination with consulting psychologist Dr. Brenner, Plaintiff presented as alert, fully oriented, polite, cooperative, and responsive to social interaction with good eye contact (Tr. 301).  The ALJ properly observed that in each of the consultative examinations, Plaintiff's own reports consistently suggested that she was functioning relatively well (Tr. 21).  While Plaintiff alleged difficulties in understanding and following instructions and an inability to work in stressful situations, she did not indicate any problems in concentration, completing tasks, or memory, and only reported difficulties in following instructions if fractions were involved (Tr. 215, 220).  Plaintiff further indicated difficulties with finances in connection with adding and subtracting but reported the ability to pay bills and use money orders (Tr. 218).

      The ALJ also properly considered Plaintiff's self-reported limitations from elsewhere in the record.  As Plaintiff correctly notes, when addressing mental health impairments, the ALJ's decision "must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Parsons v. Heckler*, 739 F.3d 1334, 1341 (8th Cir. 1984)).  Plaintiff also asserts that the Eighth Circuit Court of Appeals has noted the need to consider the frequency and independence of Plaintiff's activities, and her ability to sustain them over a period of time.  *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).  While this may be true, the evaluation of Plaintiff's subjective reports is within the purview of the ALJ as the trier of fact and observer of witnesses at the hearing.  *See Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016).  As such, the ALJ's findings concerning the subjective reports is entitled to deference by the

Court.  *See*, *e.g.*, *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016); *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Upon review of the record, the Court finds there was not any evidence to suggest any current or significant difficulties in social functioning, interactions, adapting, or managing oneself (Tr. 21).  For example, Plaintiff reported driving, shopping, caring for her children, and attending to the household chores such as cleaning, ironing, mowing, and laundry (Tr. 216-18). Plaintiff reported having friends that she kept in touch with daily, and seeing her parents daily and in-laws a few times per week (Tr. 41, 302).  Further, Plaintiff reported that she was able to concentrate adequately in the kitchen and could follow written recipes with her reading skills being generally intact, and was able to cook things such as tacos, pork steak, and pork chops (Tr. 40, 302).  Additionally, Plaintiff was responsible for the care of her three children, and cared for her four-year-old daughter on her own throughout the day while her husband was at work (Tr. 43).  As the ALJ properly noted, these activities provide support that the claimant retains the ability to perform work with the limitations as noted in the RFC (Tr. 21).  Considered in full, Plaintiff's reported activities and the evidence above affect her credibility concerning the limiting effects of her symptoms.  *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

In addition to properly evaluating Plaintiff's subjective complaints, the ALJ also thoroughly and properly reviewed the medical opinion evidence of record.  First, the ALJ properly evaluated the opinion of Dr. Steven Akeson, Psy.D. ("Dr. Akeson"), a state agency medical consultant (Tr. 21-22).  In his May 16, 2017 opinion, Dr. Akeson indicated that Plaintiff had moderate limitations in understanding, remembering, or applying information (Tr. 109).  He

9

also noted moderate limitations in concentrating, persisting, or maintaining pace and mild limitations in interacting, adapting, and managing oneself (*Id.*).  Dr. Akeson further opined that Plaintiff was able to understand, remember, and carryout simple instructions, maintain adequate attendance, sustain an ordinary routine without special supervision, interact adequately with peers and supervisors, and adapt to most usual changes common to competitive work (Tr. 110).  The ALJ was "persuaded" by the assessment, as "the opinion appear[ed] consistent with the overall evidence" (Tr. 22).  The limitations, or lack thereof, put forth by Dr. Akeson are consistent with Plaintiff's daily activities of driving, shopping, caring for her children, and attending to the household chores such as cleaning, ironing, mowing, and laundry (Tr. 216-18).  An ALJ may properly consider the consistency of the opinion with evidence from other medical sources and nonmedical sources in the claim to determine the persuasiveness of the medical opinion.  20 C.F.R. § 404.1520c(c)(2).

Second, the ALJ properly reviewed the May 2017 opinion of consulting psychologist Dr. Brenner, Ph.D., who diagnosed Plaintiff with mild intellectual disability and opined that individuals functioning at this level of intellect can learn simple work tasks with some repetition and instruction (Tr. 303).  Dr. Brenner indicated that detailed or complex tasks were likely to be beyond Plaintiff's abilities, she would need assistance with making work decisions and adapting to changes, and her work pace was likely to be much slower than that of others (*Id.*).  Dr. Brenner opined that Plaintiff may be more successful in a noncompetitive work setting and that her interpersonal skills were generally intact, but she would benefit from monitoring to ensure others did not take advantage of her (*Id.*).

While the ALJ was "persuaded by most of" Dr. Brenner's assessment of Plaintiff, she was "not persuaded by Dr. Brenner's [opinion] indicating [Plaintiff] would likely need assistance

10

with decisions and adapting to changes or [Plaintiff] having a much slower pace than others" (Tr. 22). The ALJ determined that the evidence overall, including Dr. Brenner's examination and Plaintiff's daily activities, supported Plaintiff's ability to make simple decisions and to adjust to minor infrequent changes in the work setting (*Id.*). The ALJ stated that Dr. Brenner's assessment that Plaintiff would be slower than others was "somewhat speculative from jobs that [Plaintiff] had in 2005 and 2013 for a few months" and noted that it was unclear why Plaintiff ended her employment, but she was not fired and reported no reprimands (Tr. 22, 293). In fact, as the ALJ noted, per Vivian Gould's testimony Plaintiff quit the job, was not the slowest, and produced good quality work (Tr. 47, 63). Plaintiff assessed herself as a slower worker, but asserted that she did well once she learned a job (Tr. 301). Additionally, Plaintiff admitted to caring for her youngest child daily, an undertaking that lends credence to her ability to make simple decisions and adapt to minor infrequent changes in responsibilities (Tr. 42-43). Plaintiff asserts that the ALJ improperly used Plaintiff's activities of daily living as a basis for determining that she was not as limited as Dr. Brenner suggested (Doc. 21 at 28). However, an ALJ may discount a medical opinion in light of the inconsistency of that opinion with a plaintiff's activities of daily living. *See*, *e.g.*, *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's self-reported activities of daily living provided additional reasons for the ALJ to discredit Dr. Hollis's pessimistic views of her abilities."); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018); *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017). As previously noted, an ALJ may also properly consider the consistency of the opinion with evidence from other medical sources and nonmedical sources in the claim to determine the persuasiveness of the medical opinion. 20 C.F.R. § 404.1520c(c)(2).

To the extent Plaintiff asserts that the ALJ's decision in not supported by substantial evidence because the ALJ failed to properly consider the opinion of Dr. Brenner that Plaintiff would need assistance making work decisions and that her work pace would likely be slower than that of others and did not include that limitation in her hypothetical before the vocational expert, the ALJ is not required to include every limitation identified in a medical opinion in her RFC determination and she is only required to include those limitations she finds credible in her hypothetical to the vocational expert. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.")  As noted by Plaintiff, placing Dr. Brenner's opinions in vocational terms may be difficult without further specific limitations (Doc. 21 at 20).  However, Plaintiff ignores that the record already contained three consultative examinations for the ALJ to use in her determination of Plaintiff's RFC, and wrongly assumes that the ALJ must base the RFC on a specific medical opinion.  "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Cox*, 495 F.3d at 619-20).

The ALJ fulfilled her responsibility to fully and fairly develop the record through evaluation of Plaintiff's school records, activities of daily living, the medical opinions of record, and the hearing testimony.  Upon a complete review of this record, the ALJ found Plaintiff to be limited to simple unskilled work with no fast-paced production quotas or work, simple decision-making, minor changes in the work setting, and no work involving reading or math as primary job functions (Tr. 21).  These restrictions on work were supported by substantial evidence and adequately accounted for Plaintiff's intellectual disability and alleged limitations in

understanding, following instructions, adding and subtracting, and handling changes in routine or stress.

Finally, Plaintiff asserts that the hypothetical question to the vocational expert did not encompass all relevant impairments, and therefore, the response of the vocational expert does not represent substantial evidence (Doc. 21 at 24-34).  Specifically, Plaintiff argues that the failure to include the limitations assessed by consulting psychologist Dr. Brenner, meant the restrictions contained in the RFC did not capture the consequences of Plaintiff's deficiencies, the hypothetical question posed is consequently flawed and the vocational expert's response does not represent substantial evidence (*Id.*).  However, as previously addressed, the Court finds the ALJ's RFC determination to be consistent with the relevant evidence of record.  Accordingly, as the ALJ appropriately included the restrictions as indicated in her RFC determination in the hypothetical question to the vocational expert, the Court finds that the hypothetical which the ALJ submitted to the vocational expert was proper, the ALJ properly relied on the vocational expert's testimony that there were jobs existing in significant numbers which Plaintiff could perform, and Plaintiff's arguments to the contrary are without merit.  *Turner v. Colvin*, 621 F. App'x 865, 868 (8th Cir. 2015) ("A hypothetical to the VE 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.'") (quoting *Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005)).  Because there were jobs which Plaintiff could perform, the Court additionally finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence and is consistent with the regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 26th day of March, 2021.

 /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE